UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10116-RGS

FORTIFYIQ, INC.

v.

MELLANOX TECHNOLOGIES, LTD.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

March 1, 2021

STEARNS, D.J.

FortifyIQ, Inc. (FortifyIQ) filed this suit against Mellanox Technologies, Ltd. (Mellanox), alleging that Mellanox breached the parties' contract (Count II), unjustly enriched itself at FortifyIQ's expense (Count III), and/or committed unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count IV) by failing to pay for more than two hundred hours of labor performed by FortifyIQ employees.  FortifyIQ also seeks declaratory judgment that the terms of the parties' contract allow it to use and publish comments Mellanox employees made about its software during the parties' business interactions (Count I).  Mellanox moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).  For the following reasons, the court will DENY the motion.

## BACKGROUND

The essential facts, drawn from the Complaint (Dkt # 1-1 at 10-23) and the documents incorporated by reference, as viewed in the light most favorable to FortifyIQ, are as follows. On September 22, 2019,[1] FortifyIQ and Mellanox entered into a Trial Period End User License Agreement (the Agreement), Ex. B to Compl. (Dkt # 1-1 at 26-33), which provided for FortifyIQ to deliver certain software services to Mellanox on a trial basis. As part of the trial, FortifyIQ agreed to supply Mellanox with 20 hours of support for its software "at no charge." Ex. C to Compl. (Dkt # 1-1 at 34-35); *see also* Ex. B to Compl. §§ 2, 3.1, 3.2, 10.5. Any additional support beyond the first 20 hours, however, would cost $375 per hour and would be ordered "by written instrument." Ex. C to Compl.

During the trial period, which lasted through October 23, 2019, FortifyIQ, allegedly acting "at the request of" Mellanox,[2] "provided labor of at least 173 hours in excess" of the free 20 hours guaranteed in the

---

[1] The Complaint alleges that the parties entered into this Agreement on September 19, 2019. Review of the Agreement itself, however, reveals that Mellanox did not sign until September 22, 2019.

[2] The Complaint does not identify whether these requests were made orally or in writing.

2

Agreement.  Compl. ¶ 23.  When FortifyIQ later sought compensation for these hours of labor, Mellanox refused to pay.

On January 13, 2020, several months after completion of the trial period, representatives from both parties participated in a conference call. FortifyIQ alleges that, during this call, Mellanox requested "additional analysis, development and testing" and assistance "with circuit design services." Compl. ¶¶ 31-32.  It also alleges that, in the wake of the call, the parties exchanged several emails "confirming the request for Additional Support Services." Compl. ¶¶ 34-37.  FortifyIQ ultimately spent 59.5 hours performing the additional services.  When FortifyIQ subsequently sought compensation for its labor, Mellanox again refused to pay.

In October of 2020, FortifyIQ filed this action in the Massachusetts Superior Court seeking to recover for its unpaid labor and to obtain declaratory judgment that it may use the "substantial feedback regarding the performance of the software" gathered during the trial period.[3]  Compl. ¶ 48.

---

[3] Mellanox has "communicated" that it believes any publication or use of this feedback would breach the Agreement.  Compl. ¶ 50.  In support, it cites § 6.4, which states that "[e]ach party agrees to hold the other party's Confidential Information," defined with respect to Mellanox as "any non-public information of any form obtained by FortifyIQ or its employees and/or representatives in the performance of this Agreement," Ex. B to Compl. § 6.2:

> [I]n strict confidence and not to copy, reproduce, sell, assign,

3

Mellanox removed the case to the federal district court on January 22, 2021, and now moves to dismiss.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim

---

> license, market, transfer or otherwise dispose of, give or disclose such information to third [sic], or to use such information for any purposes whatsoever other than as contemplated by this Agreement.

*Id.* § 6.4. FortifyIQ, however, maintains that § 4.1 gives it a right to use the feedback obtained during the trial period for any purpose notwithstanding the confidentiality provision. Section 4.1 of the Agreement states:

> If Customer provides any suggestions, idea, feedback, or recommendations to FortifyIQ regarding the Software ("Feedback"), FortifyIQ may use this Feedback for any purposes and without any obligation to Customer. By providing FortifyIQ with Feedback, Customer gives FortifyIQ a worldwide, perpetual, irrevocable, fully-paid and royalty-free license to use and exploit in any manner any and all Feedback.

*Id.* § 4.1.

4

for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Count II, Breach of Contract

Count II asserts a claim for breach of contract relative to Mellanox's failure to pay for FortifyIQ's labor. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

Mellanox argues that the Complaint fails to establish the existence of any contract between the parties for support services beyond the 20 "free" hours, contending that under the Agreement additional support services could only be ordered "by written instrument," Ex. C to Compl., and that the Complaint does not allege that Mellanox ever executed any such instrument. It is true that the Complaint vaguely refers to "requests" for additional labor – some of which were "confirm[ed]" by email, Compl. ¶ 34 – without specifying that the requests were made by a "written instrument," *see id.* ¶¶

23, 31-34.[4] Even assuming Mellanox did not execute a written order for the additional labor, the court is not convinced that FortifyIQ's contract claims necessarily fail. As a preliminary matter, because the Agreement provided only for 20 hours of labor "at no cost" during the trial period and did not specify any terms of performance for the additional hours of labor (beyond generally setting an hourly rate and indicating that Mellanox would order this labor "by written instrument"), it is not clear that the Agreement unambiguously set the parameters for the labor hours at dispute in this case (especially the 59.5 hours performed after completion of the trial period).[5] Even assuming they do, however, the Agreement does not contain any provision limiting the modification of the Agreement to a signed writing, and FortifyIQ has alleged a pattern of conduct – oral requests confirmed by the parties' subsequent behavior and communications – from which the court

---

[4] The court need not decide at this stage whether the email communications allegedly confirming the requests for additional labor qualify as written instruments because, as discussed below, FortifyIQ has plausibly alleged breach of contract claim even if they do not.

[5] Because the parties, unlike the court, appear to take for granted that the Agreement would cover these labor hours, the parties do not address whether FortifyIQ has plausibly alleged the existence of a contract outside the scope of the Agreement (*e.g.*, through allegations of an oral request for work and subsequent performance of that work or through allegations of an oral request for work and subsequent memorialization of that request in email communications and billing statements).

can plausibly infer the existence of a modification to this term of the contract.[6] The court thus declines to dismiss the claim at this early stage in the proceedings.

Count II also asserts a claim for breach of contract relative to Mellanox's "refus[al] to permit [FortifyIQ] to use or publish feedback regarding its successful trial or design work." Compl. ¶ 62. Mellanox argues that this portion of Count II fails because "[t]he explicit and broad confidentiality provisions of the Contract, Sections 6.2 and 6.4, control," and these provisions do "not allow FortifyIQ to publish or otherwise disclose the results of the proof-of-concept trial or any other Mellanox confidential information." Def.'s Mem. of Law in Supp. of Mot. to Dismiss (Dkt # 7) at 16. But § 6.4 only prohibits use of confidential information "for any purposes whatsoever *other than as contemplated by this Agreement*." Ex. B to Compl. § 6.4. And § 4.1 broadly contemplates the use of "any suggestions, idea, feedback, or recommendations to FortifyIQ regarding the Software . . . for any purposes and without any obligation to Customer." *Id.* § 4.1. The

---

[6] Mellanox offers another plausible explanation for the cited conduct – that the oral requests were part of a larger chain of communication in which the parties negotiated the terms of a future business relationship and thus that they were not reflective of any freestanding order for additional support services – but the court must make all reasonable inferences in FortifyIQ's favor at this juncture.

7

confidentiality provisions accordingly do not prevent FortifyIQ from using feedback regarding its software in whatever manner it sees fit.

The issue remains, of course, as to whether the information FortifyIQ seeks to publish would, in fact, qualify as feedback regarding its software, as contemplated within the scope of § 4.1. But the court will need the benefit of further factual development before resolving this issue on the merits.[7] The court accordingly will deny the motion to dismiss Count II.

### b. Count III, Unjust Enrichment

Count III raises a claim for unjust enrichment relative to Mellanox's failure to pay for requested labor. Mellanox does not appear to dispute that FortifyIQ has sufficiently pled the factual predicate for an unjust enrichment claim. It argues instead that FortifyIQ cannot state a claim because it has an adequate alternative remedy available, namely, a breach of contract claim. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment"). But because Mellanox disputes the existence of any contract between the parties for additional support services, and because the court is, any event, not convinced that the labor hours at dispute in this case are unambiguously

---

[7] The Complaint does not identify, for example, the specific comments FortifyIQ proposes to use, and such information will be crucial to the court's resolution.

subject to the terms of the Agreement, it would be inappropriate for the court to require FortifyIQ to make an exclusive election of a contractual remedy at this stage of the litigation.  *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-141 (1st Cir. 2012).  The court accordingly will deny the motion to dismiss Count III.

### c. Count IV, Chapter 93A

Count IV asserts unfair and deceptive business practices by Mellanox in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Chapter 93A).  Mellanox argues that the Complaint pleads a "quotidian business dispute" falling outside the scope of Chapter 93A.  Def.'s Mem. in Supp. of Mot. to Dismiss at 18.  But the court is not prepared at this point to say that the Complaint fails to plead conduct which, if taken as true, would qualify as sufficiently unfair in "nature, purpose, and effect" as to render the protections of Chapter 93A applicable.  *See Com. Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 43 (1st Cir. 2000).  The Complaint alleges, for example, that in the guise of negotiating with FortifyIQ to establish an ongoing business relationship, Mellanox "accepted" and "continued to use and exploit consulting, other services and work product developed" by FortifyIQ even though it had no "actual intention to pay for said work."  Compl. ¶¶ 78, 100.  It also alleges that, when presented a bill for labor, a Mellanox representative

9

"falsely stated that he believed that [FortifyIQ] was assisting [Mellanox] without charge, although he knew that [FortifyIQ] expected payment for its consulting services." *Id.* ¶ 100. Because these allegations create the reasonable inference that Mellanox knowingly strung FortifyIQ along with the promise of a future business relationship so that Mellanox could receive the benefit of labor for which it had no intention of paying, the court determines that the Complaint plausibly states a claim under Chapter 93. *See T. Butera Auburn. LLC v. Williams*, 83 Mass. App. Ct. 496, 508 (2013) (a breach of contract may be actionable under Chapter 93A where a party knowingly and intentionally acts to obtain an unbargained-for benefit to the detriment of the other party).

With respect to the feedback provision, the Complaint alleges that Mellanox "has refused to permit [FortifyIQ] to use and publish feedback" despite having agreed to do so in the Agreement and, in fact, "never had an intention of honoring" this provision of the Agreement or "permitting [FortifyIQ] to use and publish feedback." *Id.* ¶¶ 104-105. Again, the court finds these allegations sufficient to plausibly state a claim under Chapter 93. They create the reasonable inference that Mellanox "entered into [the Agreement] under false pretenses in order to obtain the testing of its circuit's

security without intending to honor the contract between the parties." *Id.* ¶ 106. The court accordingly will deny the motion to dismiss Count IV.

### d. Count I, Declaratory Judgment

Count I seeks declaratory judgment that FortifyIQ "may use and publish all feedback regarding the performance of [its] software," including feedback pertaining to the results of the trial and the "factual substance" underlying it, although not including any "data obtained during the trial." Compl. at 8 & n.1. Because § 4.1 of the Agreement unambiguously permits FortifyIQ to use feedback related to its software for any purpose, the court presumes that Count I instead seeks a declaration that the information FortifyIQ wishes to publicize would qualify as "feedback" within the scope of that provision. As noted above, without further factual development, the court is not presently in a position to resolve this issue on the merits.

### ORDER

For the foregoing reasons, Mellanox's motion to dismiss is <u>DENIED</u>.

       SO ORDERED.

       /s/ Richard G. Stearns_____
       UNITED STATES DISTRICT JUDGE